## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

FILED IN OPEN COURT

OCT 2 3 2014

CHARLES R. DIARD, JR.
CLERK

UNITED STATES OF AMERICA     *

                                  *

v.                                *     Criminal No. 14-00054-CG

                                    *

ADRIANNE DAVIS MILLER     *

## PLEA AGREEMENT

     The abovecaptioned defendant, represented by her counsel, and the United States of

America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of

Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands her rights as follows:

        a.      To be represented by an attorney;

        b.      To plead not guilty;

        c.      To have a trial by an impartial jury;

        d.      To confront and cross-examine witnesses and to call witnesses and produce

                other evidence in her defense; and

        e.      To not be compelled to incriminate herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b. through e., listed above, and pleads guilty to Counts

One and Five of the indictment, charging violations of Title 21, United States Code,

Section 846, conspiracy to possess with intent to distribute methamphetamine, a

Schedule II controlled substance, and Title 21, United States Code, Section

841(c)(2), possession of a List I chemical with knowledge and reasonable cause to

1

believe it would be used to manufacture a controlled substance.

3.      The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements she makes intentionally in this plea of guilty.

4.      The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5.      The defendant is not under the influence of alcohol, drugs, or narcotics.   She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement.   She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against her.   The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of her offense.

7.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt.   The defendant and her counsel have discussed possible defenses to the charge.   The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8.      A separate document, entitled Factual Resume, will be submitted to the Court as

2

evidence at the guilty plea hearing.   The Factual Resume is incorporated by reference into this Plea Agreement.   The defendant and the United States agree that the Factual Resume is true and correct.   Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

9.      This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement.   There have been no promises from anyone as to the particular sentence that the Court will impose.   The defendant is pleading guilty because she is guilty.

10.    The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter.   This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11.    The maximum penalty the Court could impose as to Count One of the Indictment is:

a.      10 years to life imprisonment;

b.      A fine not to exceed $10,000,000;

c.      A term of supervised release of 5 years, which would follow any term of imprisonment.   If the defendant violates the conditions of supervised

3

release, she could be imprisoned for the entire term of supervised release;

d.      A mandatory special assessment of $100;

e.      Criminal forfeiture.

As to Count 5 of the Indictment, the defendant understands that the maximum

penalty is:

f.      Up to 20 years imprisonment;

g.      A fine not to exceed $250,000;

h.      A term of supervised release of 5 years, which would follow any term of

imprisonment.   If the defendant violates the conditions of supervised

release, she could be imprisoned for the entire term of supervised release;

i.      A mandatory special assessment of $100;

j.      Criminal forfeiture.

## **SENTENCING**

12.     The Court will impose the sentence in this case.   The United States Sentencing

Guidelines are advisory and do not bind the Court.   The defendant has reviewed

the application of the Guidelines with her attorney and understands that no one can

predict with certainty what the sentencing range will be in this case until after a

pre-sentence investigation has been completed and the Court has ruled on the

results of that investigation.   The defendant understands that at sentencing, the

Court may not necessarily sentence the defendant in accordance with the

Guidelines.   The defendant understands that she will not be allowed to withdraw

her guilty plea if the advisory guideline range is higher than expected, or if the

Court departs or varies from the advisory guideline range.

13.    The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.    The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation.   Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

15.    Both the defendant and the United States are free to allocute fully at the time of sentencing.

16.    The defendant agrees to tender $200 to the United States District Court Clerk in satisfaction of the mandatory special assessment in this case.   The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of her sentencing.

## FORFEITURE

17.    The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of her criminal activities or which facilitated any aspect of these illegal activities, in accordance with the forfeiture allegation in the Indictment. The defendant agrees to the forfeiture of the firearm seized in

connection with Count Seven.

## FINANCIAL OBLIGATIONS

18.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit

report in order to evaluate the Defendant's ability to satisfy any financial obligation

imposed by the Court. In order to facilitate the collection of financial obligations to

be imposed in connection with this prosecution, the Defendant agrees to disclose

fully all assets in which the Defendant has any interest or over which the Defendant

exercises control, directly or indirectly, including those held by a spouse, nominee

or other third party.

## UNITED STATES' OBLIGATIONS

19.     The United States will not bring any additional charges against the defendant

related to the facts underlying the Indictment and will move to dismiss all

remaining counts once sentence is imposed.   This agreement is limited to the

United States Attorney's Office for the Southern District of Alabama and does not

bind any other federal, state, or local prosecuting authorities.

20.     The United States will recommend to the Court that the defendant be sentenced at

the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

21.     The defendant understands and agrees that she has no right to cooperate, and that

the decision whether to allow her to cooperate is reserved solely to the United

States in the exercise of its discretion.   If the United States agrees to allow the

defendant to cooperate, and if the defendant agrees to cooperate, the following

terms and conditions apply:

a.     The defendant shall fully, completely, and truthfully respond to all questions put to her by law enforcement authorities regarding the underlying facts of the offense(s) with which she is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which she has information or knowledge.

b.     The defendant acknowledges that she understands that she shall provide truthful and complete information regarding any offense about which she has knowledge or information regardless of whether law enforcement authorities question her specifically about any such offense.   This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.     The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority.   The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide.   This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully

before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.    If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher.   The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.    The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense.   This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.    The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.    If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal

offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.   The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation.   The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance.   The defendant also understands that, should she provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h.     The United States and the defendant agree that any breach of this agreement

by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from her illegal activities or obtained by others associated with her or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1)    permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2)    permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement.   The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during her breached cooperation.   Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.    Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement,

10

including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during her cooperation. The defendant acknowledges and agrees that the information that she discloses to the United States pursuant to this agreement may be used against her in any such prosecution.

j. The United States and the defendant agree that the defendant will continue her cooperation even after she is sentenced in the instant matter. her failure to continue her cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights she may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

22. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence (including a sentence imposed on revocation of probation or supervised release) in any district court or appellate court proceedings.

11

a.   **EXCEPTIONS.**   The defendant reserves the right to timely file a direct appeal challenging:

(1)   any sentence imposed in excess of the statutory maximum;

(2)   any sentence which constitutes an upward departure or variance from the advisory guideline range.

In addition, the defendant further reserves the right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to Title 28, United States Code, Section 2255.

23.   If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

24.   The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

25.   If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

26.   The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant.   In the exercise of its discretion, the United States will be free to

prosecute the defendant on any charges of which it has knowledge.   In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

27.     In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

28.     This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: 10/7/14

Vicki M. Davis, Criminal Chief
Assistant United States Attorney

Date: 10/7/2014

Gloria A. Bedwell
Assistant United States Attorney

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me.   I have read this Plea Agreement and carefully reviewed every part of it with my attorney.   I understand this agreement, and I voluntarily agree to it.   I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have

13

proved the same beyond a reasonable doubt.

Date:_____10/25/14_____                  *Adrienne Davis Miller*
                                             Adrienne Davis Miller

I am the attorney for the defendant.   I have fully explained her rights to her with respect to the offense(s) charged in the Indictment in this matter.   I have carefully reviewed every part of this Plea Agreement with her.   To my knowledge, her decision to enter into this agreement is an informed and voluntary one.   I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, her decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date:_____10/23/14_____                      _____
                                             James B. Pittman, Jr., Esq.
                                             Defense Counsel

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA      *

     *

**v.**      *      **Criminal No.14-00054-CG**

     *

**ADRIANNE DAVIS MILLER**      *

### FACTUAL RESUME

The abovecaptioned defendant admits the allegations of Counts 1 and 5 of the Indictment.

### ELEMENTS OF THE OFFENSE

**Count One**:   The defendant understands that in order to prove a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine, as charged in Count One of the Indictment, the United States must prove the following beyond a reasonable doubt:

First, that two or more individuals came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute methamphetamine; and second, that the defendant, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan; and third, that at least 50 grams of methamphetamine was involved in the conspiracy.

**Count Five**:   The defendant understands that in order to prove a violation of Title 21, United States Code, Section 841(c)(2), possession of a List I chemical with knowledge and reasonable cause to believe it would be used to manufacture a controlled substance, the United States must prove the following beyond a reasonable doubt:

that the defendant knowingly and willfully possessed a listed chemical, in this case, pseudoephedrine; that pseudoephedrine is a List I chemical; and that she possessed the listed chemical knowing or having reasonable cause to believe it would be used to manufacture a

1

controlled substance.

## OFFENSE CONDUCT

The defendant admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.   This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for his plea of guilty.   The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

### Facts

On February 11, 2014, members of the Mobile County Sheriff's Office received information from a cooperating defendant (CD) who has been charged with possession of controlled substance charge with the Baldwin County Sheriff's Office.   CD provided information about some of the members of the conspiracy who were involved in the distribution of methamphetamine ice.   On or about February 28, 2014, Deputy J.T. Sullivan received information that a white male subject known as Thomas Jason Strickland (aka J-Red), and other subjects at Strickland's residence on East Carlton Acres Drive where they were cooking methamphetamine.   The anonymous source stated that Strickland and one of the others were in possession 30 boxes of pseudoephedrine and were actively engaged in the process of cooking methamphetamine.

On or about March 11, 2014 at approximately 0930 hours, Deputy Sullivan received a call from a reliable confidential informant (RCI) who advised that a white male subject known as Thomas Jason Strickland, aka "J-Red" was in possession of a large amount of methamphetamine ice.   "J-Red" told the reliable confidential informant that he (J-Red) could sell the reliable confidential informant three ounces of methamphetamine ice for $4,000. The reliable confidential

2

informant told "J-Red" that he (the RCI) did not have that kind of money but that he (the RCI) would have to contact some people to see if they could come up with the money.

The RCI then contacted Deputy Sullivan.   Deputy Sullivan then drove to the location of Strickland's residence on East Carlton Acres Drive.

At approximately 1200 hours, the reliable confidential informant then placed a call to Strickland, aka "J-Red" and told "J-Red" that the RCI had some people that wanted to try out an eight ball (3.5 grams) of the methamphetamine ice that "J-Red" had talked about earlier. Between 12:30 -12:40 hours, MCSO Deputy Bryan Hill observed a white male subject exit and leave the residence on East Carlton Acres Drive.   Deputies Sullivan, Clinton Law, and Greg O'Shea then proceeded to follow the driver of the green older model Ford Mustang with the tan soft convertible top to the meeting with the RCI on Lott Road.

A short time later, the RCI contacted Deputy Sullivan and advised him that "J-Red" had brought a total of three (3) ounces of methamphetamine ice to the RCI but only left one (1) ounce. The RCI stated "J-Red" wanted to leave the entire amount with the RCI. The RCI advised "J-Red" that he did not want the entire amount at this time but would contact him as soon as the RCI could determine if his "people" wanted more.   The RCI would then contact "J-Red" to get the other two ounces of methamphetamine ice. "J-Red" (Thomas Jason Strickland) was kept under constant surveillance during the time that he left the residence until he met with the RCI. Deputy Sullivan retrieved the methamphetamine ice from the RCI that was left by "J-Red."   The methamphetamine ice field tested positive for methamphetamine.

On the same day, March 11, 2014, at approximately 3:50 p.m., a state search warrant was obtained for "J-Red's" residence on East Carlton Acres Drive.   Using the RCI, the deputies arranged for Strickland to deliver the other two ounces of methamphetamine ice. The Mobile

3

County Sheriff's Office Narcotics Unit conducted a take down on Strickland and seized the two ounces of methamphetamine ice.   The methamphetamine ice field tested positive for methamphetamine.   Strickland was read his Miranda rights and stated he understood his rights. Strickland gave Deputy Sullivan information concerning a subject named "Adrianne" who was receiving methamphetamine ice from the Montgomery area and selling in the Mobile area.   He stated he purchased meth ice from her in the past and could still purchase ice from her.   Strickland gave "Adrianne's" vehicle description and directions to her residence.

On March 12, 2014, Deputy Sullivan followed the directions given to him by Strickland to "Adrianne's" residence and obtained the tag number from the vehicle parked in the driveway. The Alabama tag was registered to Adrianne Davis Miller with a Montgomery address. Strickland further stated that Adrianne Miller was due to receive a shipment of methamphetamine ice from her supplier, also reportedly from the Montgomery area.

On March 13, 2014, it was discovered that Adrianne Miller and Malcolm David Thomas were in a hotel room at a hotel in Satsuma, Alabama.   Deputies Alan O'Shea, Raylene Busby, and a Mobile County Sheriff's Office canine unit set up surveillance at this hotel.   Due to erratic driving by Thomas when he left the hotel, the deputies suspected that he was attempting to determine whether he was being followed, so they decided to terminate the surveillance.

On March 14, 2014, at approximately 7:15 a.m., Deputy Sullivan verified with the hotel that Adrianne Miller was registered there.   Subsequently, surveillance was initiated on the hotel. Thomas and another white male exited the hotel and entered Miller's vehicle, a red Honda.   The red Honda came to a stop near the hotel office and the white male exited the red Honda.   The white male was observed getting into a Budget rental truck parked on the opposite side of the LaQuinta Inn parking lot.   Both vehicles exited the parking lot with the Budget rental truck

4

following the red Honda and both vehicles traveled to an address Old Highway 43, Creola, Alabama.

The driver of the Budget rental truck was later identified as A.M., a known meth cook, dealer and user. Both Thomas and A.M. drove to the residence on Old Highway 43, Creola, Alabama and arrived there at approximately 10:50 a.m. Both vehicles, driven by Thomas and A.M., then left the residence at approximately 10:52 a.m. As the vehicles left, Deputy John Cassidy observed a heavy set male subject walk out onto the front porch. The heavy set male was later identified as J.W. The red Honda Accord and the Budget Rental truck left the residence driving south on Highway 43. The red Honda Accord proceeded on Highway 43 and returned to the hotel in Satsuma.

Deputies John Cassidy, Bryan Hill, Greg O'Shea, Raylene Busby, and Mike Imel followed the Budget rental truck and observed the truck driving on the shoulder of Interstate 65 for long periods of time. The Budget rental truck exited onto the Springhill Avenue exit where a traffic stop was then initiated and the driver was identified as A.M. A short time later, Deputy Mike Imel obtained consent to search from A.M. Deputy Imel advised that he had retrieved a clear zippered baggie containing a substance believed to be methamphetamine ice. The methamphetamine ice field tested positive for methamphetamine.

Deputy Busby approached A.M. and read A.M. his rights per Miranda. Deputy Busby then asked A.M. where he had obtained the methamphetamine ice from and he responded, from "David." Deputy Busby then asked A.M. to clarify who "David" was and he replied "Malcolm David Thomas." Deputy Busby replied "Little Malcolm David" and A.M. stated "yes." A.M. told Deputy Busby that he had the rental truck because he was moving to north Alabama with his girlfriend. He said he was returning the rental truck because it was overheating. He said he was

with Thomas and they went to a house in Creola.   He described the man as heavy set, but said it was the first time he had seen the man and he did not know the man's name.   He said that Thomas had a black, "over the shoulder" gym type bag that he took into the heavy set man's house.   A.M. stated that inside of the gym bag was a big bag which contained about nine ounces of methamphetamine ice and a large amount of pseudoephedrine pills.   He stated that Thomas was going back to the hotel in Satsuma and picked up Adrianne Miller, and that they were going back to the man's house to pick up the methamphetamine ice and the pills.   A.M. described to the deputies the room in the house where Thomas left the black bag.   A.M. told the deputies that Thomas and Miller may have some more methamphetamine ice on them, and that he knew that David took some methamphetamine ice out of the bag before they left the man's house.

Deputy Sullivan had returned to the hotel and discovered that the hotel management staff were evicting Adrianne Miller due to a flooding of the room, 201, which leaked into the room below.   The maintenance staff had cleaned up the flooded room and removed the trash, which was still in the maintenance staff cart.   Deputy Sullivan retrieved the trash from the cart and discovered a large amount of empty boxes of pseudoephedrine pills and the blister packs along with paperwork with the names of Malcolm David Thomas and Adrianne Leigh Davis. By counting the total number of blister packs, the deputies established that there were 96 tablets of this type of pseudoephedrine, commonly referred to as "red hots," removed from the packaging recovered from the trash.

With information received from A.M., a state search warrant was obtained for the residence on Old Highway 43, Creola, Alabama.   Just prior to the execution of the State search warrant,   J.W. was observed leaving the house and investigators followed.   J.W. was stopped for a traffic violation and while the traffic stop was occurring, the state search warrant was executed at

6

the residence on Old Highway 43.   During the search of the residence, the investigators discovered approximately 43 grams of methamphetamine ice and J.W. was subsequently arrested at the scene of the traffic stop.   J.W. was transported back to his residence and read his Miranda rights. J.W. agreed to speak to the deputies and stated that Malcolm David Thomas and A.M. had come to his house and told him that their hotel room had flooded and they wanted to leave a bag with him.   Thomas and McClure further stated they would be by to pick it up later.   The 43 grams of suspected methamphetamine ice was discovered in a gym bag and reported to be the bag that Malcolm David Thomas left at J.W.'s residence.   The search also revealed the following items, a sandwich bag full of pseudoephedrine pills (96), digital scales, and two shotguns.   J.W. was taken into state custody for trafficking methamphetamine ice.   The drugs field tested positive for methamphetamine.

After a period of time, surveillance units observed that Thomas traveled back to the hotel in the red Honda and picked up Miller.   Miller entered the red Honda and Thomas entered a gray 2004 Pontiac Grand Am.   Both subjects departed the parking lot of the hotel in the two vehicles.

Deputy Sullivan and Sgt. Thornton assisted a marked unit in conducting a traffic stop on Adrianne Davis Miller.   She was driving the red Honda, which had an improper tail light.   Miller was read her Miranda rights and agreed to cooperate with the deputies.   Miller was asked about her involvement with selling and distributing methamphetamine ice.   Miller stated she was going to receive a shipment of meth ice later that day from her source which she identified as Jeffrey Marks.   Miller agreed to contact Marks to determine when he would be traveling to the Mobile area.   Marks stated he would be leaving around 7:00 p.m., after he finished handling some other business.   Miller told the deputies that she customarily obtained the hotel room for Marks and his wife when they arrived in Mobile with the drugs.   A plan was formulated by the deputies to get

the room in Miller's name using funds from the Mobile County Sheriff's Office Narcotics fund. They obtained room 428 at a hotel on the West I-65 Service Road in Mobile for this purpose.

On March 14, 2014, deputies approached Malcolm David Thomas in the gray 2004 Pontiac Grand Am at the Murphy Gas Station at the Walmart Store in Saraland, Alabama. Thomas was detained due to the fact that the search warrant was being executed at the residence on Old Highway 43. Thomas not charged at that time pending further investigation.

On March 15, 2014, at approximately 8:00 a.m., Marks arrived at the hotel on West I-65 Service Road, Mobile, Alabama, with his wife, Jeri M. Marks. Marks was driving a 2004 gray Dodge Durango. They went to room 428. At approximately 9:15 a.m., MCSO deputies entered the room they had rented for Marks after receiving confirmation that he was ready to meet with Miller to supply her with methamphetamine ice. The deputies observed the incriminating evidence in plain view-- syringes on the night stand, a sandwich bag with methamphetamine ice (approximate weight 24.4 grams) on top of the entertainment center, and a hand towel on the bed with blood on it. Also in the room was a small portable safe that was open sitting in a chair. The safe contained a zip-lock sandwich bag of marijuana (approximate weight 20 grams), North American Arms .22 caliber revolver, a sandwich bag of methamphetamine ice (approximate weight 113.1 grams), digital scales with a case, five ziplock bags of money totaling approximately $5,000 in U. S. currency, five needles, a spoon, watch battery, cigars, fingernail clippers, and numerous ziplock bags. Both bags of methamphetamine ice field tested positive for methamphetamine. Jeffrey and Jeri Marks were taken into custody.

Both subjects were read their Miranda rights and Jeffrey Marks agreed to talk with the deputies. Marks admitted that he received methamphetamine ice from a source of supply in the Montgomery area, to whom he presently owed $6,000 in drug debts. Marks further stated that he

8

only sold large quantities to Adrianne Miller.   He also advised he had conducted seven meth ice deals in the Montgomery area prior to traveling to Mobile, Alabama.   Marks stated he had firearms in the vehicle, along with a taser and firearms in the motel room.

From the investigation, through the post-Miranda statement provided by Miller, and from a Verizon payment receipt reflecting a payment on Marks' account made in Mobile, the officers learned that Marks did come to Mobile about once a week.   According to Miller, he brought with him 8 or 9 ounces of meth every week for six months.

The parties agree that the defendant is accountable for approximately 5.3 kilograms of methamphetamine ice and approximately 108.72 grams of pseudoephedrine.

AGREED TO AND SIGNED.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: 10/7/14

Vicki M. Davis, Criminal Chief
Assistant United States Attorney

Date: 10/7/2014

Gloria A. Bedwell
Assistant United States Attorney

Date: 10/23/14

Adrianne Davis Miller
Defendant

Date: 10/23/14

James B. Pittman, Jr., Esq.
Attorney for Defendant

9