UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA

THURSDAY, OCTOBER 23, 2014

v.

CASE NO. CR14-00054

ADRIANNE DAVIS MILLER,

CASE NO. CR14-00153

and CHARLES HENRY SCHAFFER,

MOBILE, ALABAMA

        Defendants.

COURTROOM 2B

* * * * * * * * * * * * * * *

GUILTY PLEAS
BEFORE THE HONORABLE CALLIE V. S. GRANADE,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
    GLORIA A. BEDWELL (Davis case)
    GEORGE F. MAY (Schaffer case)
    United States Attorney's Office
    63 S. Royal Street, Suite 600
    Mobile, AL  36602
    (251) 441-5845

FOR THE DEFENDANT:
    JAMES B. PITTMAN, JR. (Davis case)
    2102 U.S. 98
    Daphne, AL  36526
    (251) 626-7704

    T. JEFFERSON DEEN (Schaffer case)
    207 Church Street
    Mobile, AL  36602
    (251) 433-5860

THE CLERK:  MARY ANN BOYLES
COURT SECURITY:  CSO PAT PYLE
COURT REPORTER:  ROY ISBELL, CCR, RDR, CRR

        Proceedings recorded by OFFICIAL COURT REPORTER
        Qualified pursuant to 28 U.S.C. 753(a) & Guide to
    Judiciary Policies and Procedures Vol. VI, Chapter III, D.2.
        Transcript produced by computerized stenotype.

1      (1:28 p.m., in open court, defendants present.)

2           THE COURT:  Mr. May, are you standing in for

3   Ms. Bedwell in the other case?

4           MR. MAY:  Your Honor, in all candor, I hadn't planned

5   to.  But I can if there's a written plea agreement.

6           THE CLERK:  There is.

7           THE COURT:  You need to get it from --

8           THE CLERK:  Mr. Pittman?  Is your client here?

9           MR. PITTMAN:  Yes, ma'am.

10          THE CLERK:  Thank you.

11     (Ms. Bedwell entered the courtroom.)

12          THE COURT:  Mr. May, you're handling Mr. Schaffer's

13  case.  Is the penalty correct in the plea agreement?

14          MR. MAY:  I'll take a look at it, Judge.

15          MR. DEEN:  Should be up to 20.

16          THE COURT:  It says up to 20.  But I thought the

17  amount of meth that was agreed to was the five-to-40-year

18  range.  And, Ms. Bedwell, if you would check the penalty in

19  your plea agreement as well?

20          MS. BEDWELL:  Yes, ma'am.

21          MR. MAY:  Judge, we did not indict it to trigger the

22  five-year mandatory minimum.

23          THE COURT:  You didn't put any amount in it, did you?

24  In the indictment?

25          MR. MAY:  Typically we have to plead it.  Let me see

what we said on the penalty page.  Yeah, we indicted it, due to policy reasons, on a charge of mandatory minimums, even though the amount would normally trigger that, we did not put that in the indictment to trigger the mandatory minimum.  So he would have the guidelines for that amount, but would not trigger the mandatory minimum.

THE COURT:  Okay.  Well, it statutorily would.  When I'm looking at the statute --

MR. MAY:  Yes, Your Honor.

THE COURT:  -- you know, I've got to advise of what the mandatory minimum -- or what the statutory penalty is.

MR. MAY:  Right.  Correct.  But legally under Apprendi, since we didn't put it in the indictment, we can't hold them to that, since we didn't indict them under that amount.

THE COURT:  Well, if they agree to it you can.

MR. MAY:  Yes, Your Honor.

THE COURT:  So if you've agreed to that amount, what's the difference?

MR. MAY:  Well, I guess the only difference would be if he couldn't get below the -- I don't know what his criminal history is and then the safety valve and issues like that, if the guidelines would be the same, but I could see some situation where the minimum mandatory could affect him.  If -- well, for instance, let's say there were other factors that

drove up his guidelines and he wasn't safety valve.  I'm just
kind of thinking out loud.  But I know I've had some cases that
-- I'm not articulating well -- where it was of significance
with the minimum mandatory.

MR. DEEN:  We had done the plea agreement subject to
the amount being used to calculate the guidelines.  But I don't
think we thought about the mandatory minimum, because it wasn't
in the indictment.  Do we need to maybe talk about it, arm
wrestle over what we can do about that?  I don't want to agree
to something --

THE COURT:  Well, you know, if the government's happy
with the lower amount, I'm okay with it.  I just wanted to make
sure that, based upon the amount that was agreed to, it
appeared that the minimum mandatory applied.

MR. MAY:  Yes, Your Honor.

THE COURT:  Okay.

MR. MAY:  Typically it would.  But we did not put it
in the indictment.

THE COURT:  Okay.  All right.  Ms. Bedwell?

MS. BEDWELL:  Ma'am?  We have resolved the issue.
Counsel is discussing it with his defendant and should be able
to file a corrected plea agreement that reflects the penalties
that are charged in the indictment of 10 to life.

THE COURT:  Okay.

The one that was filed had some handwritten stuff on

1    it --

2          MS. BEDWELL:  Yes, ma'am.

3          THE COURT:  -- that apparently wasn't agreed to by

4    both parties?

5          MS. BEDWELL:  We discussed that, and counsel is aware

6    of our position on that.  So there's a clean copy that he's

7    discussing.

8          THE COURT:  All right.  That's fine.  I'll just wait.

9          Mr. Pittman, do you need more time?

10          MR. PITTMAN:  Just a couple of more minutes, Your

11    Honor.

12          THE COURT:  Okay.

13       (A two-minute recess was taken.)

14       (In open court, defendant present.)

15          THE COURT:  All right.  You can call the cases now.

16          THE CLERK:  Yes, ma'am.  Cases set for guilty plea

17    hearing in United States of America versus Adrianne Davis

18    Miller, criminal case number 14-54, Ms. Miller, Mr. Pittman,

19    please come forward and stand to your far right.

20          In United States of America versus Charles Henry

21    Schaffer, criminal case number 14-153, Mr. Schaffer, Mr. Deen,

22    please come forward and stand to your far left.

23          THE COURT:  All right.  Will you place the defendants

24    under oath, please?

25          THE CLERK:  Yes, ma'am.  Ms. Miller and Mr. Schaffer,

1  raise your right hand as best you can.

2      (The defendants were sworn.)

3          DEFENDANT MILLER:  Yes, ma'am.

4          DEFENDANT SCHAFFER:  Yes, ma'am.

5          THE CLERK:  You can come in closer.  I apologize.

6          THE COURT:  All right.  I'm going to be asking you a

7  series of questions and sometimes it may seem that you are

8  supposed to answer the questions at the same time

9  together.  But my court reporter needs to take down your

10 answers individually.  So when I ask you such a question if,

11 Ms. Miller, you would answer first and, Mr. Schaffer, you would

12 answer second.  All right.

13         DEFENDANT MILLER:  Yes, ma'am.

14         THE COURT:  And you will need to answer out loud.

15         Now, do each of you understand that you are now under

16 oath and that if you answer any of my questions falsely, those

17 answers may later be used against you in a separate prosecution

18 for perjury or for making a false statement?

19         DEFENDANT MILLER:  Yes, ma'am.

20         DEFENDANT SCHAFFER:  Yes, ma'am.

21         THE COURT:  All right.  Ms. Miller, what is your full

22 name?

23         DEFENDANT MILLER:  Adrianne Davis Miller.

24         THE COURT:  Where were you born?

25         DEFENDANT MILLER:  Montgomery, Alabama.

1     THE COURT:  How old are you?

2     DEFENDANT MILLER:  I'm 36.

3     THE COURT:  And how far did you go in school?

4     DEFENDANT MILLER:  Some college.

5     THE COURT:  All right.  And, Mr. Schaffer, what is

6  your full name?

7     DEFENDANT SCHAFFER:  Charles Henry Schaffer.

8     THE COURT:  And where were you born?

9     DEFENDANT SCHAFFER:  Mobile.

10    THE COURT:  How old are you?

11    DEFENDANT SCHAFFER:  44.

12    THE COURT:  And how far did you go in school?

13    DEFENDANT SCHAFFER:  10th grade.

14    THE COURT:  All right.  Have either of you been

15 treated recently for any mental illness or addiction to any

16 sort of drug?

17    DEFENDANT SCHAFFER:  No, ma'am.

18    DEFENDANT MILLER:  Yes, ma'am.  I'm currently at the

19 Home of Grace.

20    THE COURT:  All right.  And is it for methamphetamine

21 addiction?

22    DEFENDANT MILLER:  Yes, ma'am.

23    THE COURT:  All right.  And you say no, Mr. Schaffer;

24 is that correct?

25    DEFENDANT SCHAFFER:  No.

1          THE COURT:  All right.  Are either of you currently

2     under the influence of any drug, medication, or alcoholic

3     beverage?

4          DEFENDANT MILLER:  No, ma'am.

5          DEFENDANT SCHAFFER:  No, ma'am.

6          THE COURT:  Have either of you -- have both of you

7     received a copy of the indictment in this case?

8          DEFENDANT MILLER:  Yes, ma'am.

9          DEFENDANT SCHAFFER:  Yes, ma'am.

10          THE COURT:  And have you fully discussed those charges

11    and the case in general with your lawyer?

12          DEFENDANT MILLER:  Yes, ma'am.

13          DEFENDANT SCHAFFER:  Yes, ma'am.

14          THE COURT:  Do you understand the charges pending

15    against you?

16          DEFENDANT MILLER:  Yes, ma'am.

17          DEFENDANT SCHAFFER:  Yes, ma'am.

18          THE COURT:  And are you fully satisfied with the

19    counsel, representation, and advice given to you in your case

20    by your attorney?

21          DEFENDANT MILLER:  Yes, ma'am.

22          DEFENDANT SCHAFFER:  Yes, ma'am.

23          THE COURT:  All right.  Now, is there another plea

24    agreement that's been executed?

25          MR. PITTMAN:  Yes, ma'am, there has.  (Indicating).

THE COURT: All right. If you'll hand that back to Mr. Pittman and hand Mr. Schaffer's plea agreement to Mr. Schaffer. And I'll ask if each of you have your plea agreement and whether you signed your plea agreement and your factual resume.

DEFENDANT MILLER: Yes, ma'am.

DEFENDANT SCHAFFER: Yes, ma'am.

THE COURT: All right.

MR. PITTMAN: (Indicating.)

THE COURT: Is the only thing that is different in Ms. Miller's plea agreement the penalty?

MR. PITTMAN: Yes, ma'am.

THE COURT: Different from the one that was filed?

MR. PITTMAN: Correct.

THE COURT: Okay. Did each of you have the opportunity to read and discuss your plea agreement and factual resume with your attorney before you signed it?

DEFENDANT MILLER: Yes, ma'am.

DEFENDANT SCHAFFER: Yes, ma'am.

THE COURT: And do you have any agreements with the government concerning your case that are not written down in your plea agreement?

DEFENDANT MILLER: No, ma'am.

DEFENDANT SCHAFFER: No, ma'am.

THE COURT: All right. Y'all are going to have to

speak a little louder, please.  Do you understand the terms of your plea agreement?

       DEFENDANT MILLER:  Yes, ma'am.

       DEFENDANT SCHAFFER:  Yes, ma'am.

       THE COURT:  Has anyone made any promise or assurance to you of any kind that is not in the plea agreement in order to persuade you to accept the plea agreement?

       DEFENDANT MILLER:  No, ma'am.

       DEFENDANT SCHAFFER:  No, ma'am.

       THE COURT:  Has anyone threatened you in any way to persuade you to accept the plea agreement?

       DEFENDANT MILLER:  No, ma'am.

       DEFENDANT SCHAFFER:  No, ma'am.

       THE COURT:  Do you understand that certain of the terms of the plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that's more severe than you might anticipate?

       DEFENDANT MILLER:  Yes, ma'am.

       DEFENDANT SCHAFFER:  Yes, ma'am.

       THE COURT:  Has anyone attempted in any way to force you to plead guilty?

       DEFENDANT MILLER:  No, ma'am.

       DEFENDANT SCHAFFER:  No, ma'am.

       THE COURT:  Has anyone threatened you in any way to

get you to plead guilty?

        DEFENDANT MILLER:  No, ma'am.

        DEFENDANT SCHAFFER:  No, ma'am.

        THE COURT:  Has anyone made any promise or assurance of any kind to get you to plead guilty other than what is in your plea agreement?

        DEFENDANT MILLER:  No, ma'am.

        DEFENDANT SCHAFFER:  No, ma'am.

        THE COURT:  Are you pleading guilty of your own free will because you are guilty?

        DEFENDANT MILLER:  Yes, ma'am.

        DEFENDANT SCHAFFER:  Yes, ma'am.  Yes, ma'am.

        THE COURT:  All right.  Do you understand that the offense to which you are pleading guilty is a felony offense and that if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

        DEFENDANT MILLER:  Yes, ma'am.

        DEFENDANT SCHAFFER:  Yes, ma'am.

        THE COURT:  The maximum penalty provided by law, Ms. Davis -- or Ms. Miller, rather, in your case is a minimum 10 years up to life imprisonment, a fine not to exceed $10 million, a term of supervised release of five years which would

1  follow any term of imprisonment, and if you violated the

2  conditions of supervised release you could be imprisoned for

3  that entire term as well, a mandatory special assessment of

4  $100, and any criminal forfeiture that is alleged.  That is as

5  to count one.

6          As to count five, which you are also pleading to, the

7  maximum penalty is up to 20 years' imprisonment, a fine not to

8  exceed $250,000, a term of supervised release of up to five

9  years which would follow any term of imprisonment and, again,

10  if you violated those conditions, you could be in prison for

11  that entire term, and a mandatory special assessment of $100,

12  and the criminal forfeiture.

13          Do you understand those possible consequences of your

14  guilty plea?

15          DEFENDANT MILLER:  Yes, ma'am.

16          THE COURT:  Mr. Schaffer, in your case the maximum

17  penalty the Court could impose would be up to 20 years'

18  imprisonment, a fine not to exceed $1 million, a term of

19  supervised release of up to five years which would follow any

20  term of imprisonment, and if you violated those conditions of

21  supervised release you could be in prison for that entire term

22  as well, a mandatory special assessment of $100, and any

23  restitution the Court finds is appropriate.

24          Do you understand those possible consequences of your

25  guilty plea?

1          DEFENDANT SCHAFFER:  Yes, ma'am.

2          THE COURT:  All right.  Now, the United States

3    Sentencing Commission has issued sentencing guidelines for

4    judges to consider when determining the sentence in a criminal

5    case.  Have you and your attorney talked about how the

6    sentencing guidelines might affect your sentence?

7          DEFENDANT MILLER:  Yes, ma'am.

8          DEFENDANT SCHAFFER:  Yes, ma'am.

9          THE COURT:  Do you understand that the Court will not

10   be able to determine the advisory guideline range for your case

11   until after the probation office has prepared a presentence

12   report and you and the government have had the opportunity to

13   challenge the reported facts and the application of the

14   guidelines recommended by the probation office, and that the

15   sentence ultimately imposed may be different from any estimate

16   your attorney or anybody else might have given you in your

17   case?

18         DEFENDANT MILLER:  Yes, ma'am.

19         DEFENDANT SCHAFFER:  Yes, ma'am.

20         THE COURT:  And do you also understand that after your

21   initial guideline range has been determined, the Court has the

22   authority in some circumstances to depart either upwards or

23   downwards from that range and will also examine other statutory

24   factors that may result in the sentence -- in a sentence that

25   is either greater than or lesser than that called for by the

1   sentencing guidelines?

2          DEFENDANT MILLER:  Yes, ma'am.

3          DEFENDANT SCHAFFER:  Yes, ma'am.

4          THE COURT:  And do you also understand that under some

5   circumstances you or the government may have the right to

6   appeal any sentence that is imposed, but each of your plea

7   agreements contains a limited waiver of your right to appeal

8   and in each of your cases you have retained the right to appeal

9   only if sentence is imposed in excess of the statutory maximum,

10  if sentence is imposed that constitutes an upward departure or

11  variance from the sentencing guideline range, or if you have a

12  claim of ineffective assistance of counsel?  Do you understand

13  that you have waived your right to appeal in all but those

14  three circumstances outlined in your plea agreement?

15         DEFENDANT MILLER:  Yes, ma'am.

16         DEFENDANT SCHAFFER:  Yes, ma'am.

17         THE COURT:  And do you also understand that in your

18  plea agreement there's a limited -- there's a waiver of your

19  right to file a 2255 petition, or a collateral attack on your

20  conviction after it becomes final, your conviction or your

21  sentence after they become final, unless you have a claim of

22  ineffective assistance of counsel?

23         DEFENDANT MILLER:  Yes, ma'am.

24         DEFENDANT SCHAFFER:  Yes, ma'am.

25         THE COURT:  All right.  Do each of you understand that

you have a right to plead not guilty to any offense charged
against you and to persist in that plea and that you would then
have the right to a trial by jury, at that trial you would be
presumed to be innocent and the government would have to prove
your guilt beyond a reasonable doubt, you would have the right
to the assistance of counsel for your defense, the right to see
and hear all of the witnesses and have them cross-examined in
your defense, the right on your own part to decline to testify
unless you voluntarily elected to do so in your own defense,
and the right to the issuance of subpoenas to compel the
attendance of witnesses to testify in your defense?

DEFENDANT MILLER:  Yes, ma'am.

DEFENDANT SCHAFFER:  Yes, ma'am.

THE COURT:  And do you understand that if you went to
trial and decided not to testify or to put on any evidence at
all, those facts could not be used against you?

DEFENDANT MILLER:  Yes, ma'am.

DEFENDANT SCHAFFER:  Yes, ma'am.

THE COURT:  Do you further understand that by entering
a plea of guilty, if that plea is accepted by the Court, there
will be no trial and you will have waived or given up your
right to a trial as well as those other rights associated with
a trial that I've just described?

DEFENDANT MILLER:  Yes, ma'am.

DEFENDANT SCHAFFER:  Yes, ma'am.

1      THE COURT:  All right.  Now, Ms. Miller and
2  Mr. Schaffer, in each of your cases you're both pleading to a
3  charge of violating Title 21, United States Code, Section 846,
4  which is conspiracy to possess with intent to distribute
5  methamphetamine -- in your cases methamphetamine.  In order to
6  convict you of that offense, the government would have to prove
7  that two or more individuals came to a mutual understanding to
8  commit an unlawful act -- in this case, the possession with
9  intent to distribute methamphetamine -- and that you, knowing
10  the unlawful purpose of the plan, knowingly and intentionally
11  joined in that plan.  And in Ms. Miller's case the third
12  element would be at least that -- at least 50 grams of
13  methamphetamine were involved in the conspiracy.  Do each of
14  you understand those, what would have to be proved in order to
15  prove that offense?
16      DEFENDANT MILLER:  Yes, ma'am.
17      DEFENDANT SCHAFFER:  Yes, ma'am.
18      THE COURT:  And, Ms. Miller, in your case you're also
19  pleading to count five, which is a violation of Title 21,
20  United States Code, Section 841(c)(2), possession of a list I
21  chemical with knowledge that it would be used to manufacture a
22  controlled substance.  In order to convict you of that offense,
23  the government would have to prove that you knowingly and
24  willfully possessed the listed chemical -- in this case
25  pseudoephedrine -- and that pseudoephedrine is a list I

chemical, that you possessed that chemical knowing or having
reasonable cause to believe that it would be used to
manufacture methamphetamine. Do you understand what the
government would have to prove in order to convict you of that
offense?

DEFENDANT MILLER: Yes, ma'am.

THE COURT: All right. Now, I did ask each of you a
minute ago whether you had signed the factual resume attached
to the plea agreement. You said you had. And I want to make
sure that you understand that, by signing the factual resume,
you are agreeing that the government could prove the facts set
forth in that document in support of your guilty plea. Do you
understand and agree to that?

DEFENDANT MILLER: Yes, ma'am.

DEFENDANT SCHAFFER: Yes, ma'am.

THE COURT: All right. I have read the factual
resumes. So I'll now ask each of you how do you plead to the
charge or charges, guilty or not guilty?

DEFENDANT MILLER: Guilty.

DEFENDANT SCHAFFER: Guilty.

THE COURT: All right. It is the finding of the Court
in the case of United States versus Adrianne Davis Miller and
in the case of United States versus Charles Henry Schaffer that
each defendant is fully competent and capable of entering an
informed plea, that each defendant is aware of the nature of

the charges and the consequences of the plea, and that the
pleas of guilty are knowing and voluntary pleas supported by an
independent basis in fact containing each of the essential
elements of the offense.  The pleas are therefore accepted and
each defendant is now adjudged guilty of that or those
offenses.

Now, as I said earlier, the probation office will be
preparing a presentence report.  They will want to interview
you in connection with preparing that report.  They will allow
you to have your lawyer present if that's what you'd like, but
I ask you cooperate to get that done.

Are extended dates needed in either or both of these
cases?

MR. MAY:  Not for Mr. Schaffer, Your Honor.

MS. BEDWELL:  For Ms. Miller we do need an extended
sentencing date, Your Honor.

THE COURT:  Okay.  120 days sufficient for Ms. Miler?

MS. BEDWELL:  It should be for a start, Your Honor.
And if we need more time, we'll notify the Court.

THE COURT:  All right.  May we have dates, please?

THE CLERK:  For Ms. Miller, February the 23rd at
1 p.m.

THE COURT:  All right.  Is that date suitable?

MR. PITTMAN:  What date, again, Your Honor?

THE CLERK:  February 23rd.

```
 1            THE COURT:  February 23rd at 1.
 2            MR. PITTMAN:  That's acceptable, Your Honor.  Thank
 3   you.
 4            THE CLERK:  And for Mr. Schaffer, January the 27th at
 5   1:30.
 6            THE COURT:  All right.  Is that date suitable,
 7   Mr. Deen?
 8            MR. DEEN:  Yes, ma'am.
 9            MR. MAY:  Yes, Your Honor.
10            THE COURT:  Is there anything further in
11   Mr. Schaffer's case?
12            MR. MAY:  Not from the United States, Your Honor.
13            THE COURT:  All right.  That case is adjourned.
14            I'll ask the government what is the government's
15   position on Ms. Miller's continued release?
16            MS. BEDWELL:  Your Honor, the defendant has signed a
17   plea agreement providing for her cooperation with the
18   government and we'd ask the Court to consider that a
19   circumstance that would justify her continuing on conditions.
20            THE COURT:  All right.  Tell me about your status at
21   the Home of Grace.  How long have you been there and how long
22   do you expect to be there?
23            DEFENDANT MILLER:  I'm going on six weeks and it's a
24   90-day program, and they have recommended that I go to their
25   graduate program to complete.
```

1      THE COURT:  Well, I find that there are exceptional

2 circumstances in your case and will allow you to remain on the

3 same conditions of release pending sentencing at this time.

4      Anything further?

5      MS. BEDWELL:  And, Your Honor, we apologize again for

6 holding up the Court this afternoon.  We didn't intend for that

7 delay to happen.  We will work to avoid those.

8      THE COURT:  All right.  I appreciate it.

9      Mr. May, did you need to see me on another matter now

10 or do you need --

11      MR. MAY:  Yes, Your Honor.  Let me see if the agent is

12 here.

13      MR. PITTMAN:  Your Honor, is Ms. Miller excused?

14      THE COURT:  Yes.

15      DEFENDANT MILLER:  Thank you.

16    (This hearing concluded at approximately 1:52 p.m.)

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

STATE OF ALABAMA)

COUNTY OF BALDWIN)

I do hereby certify that the foregoing proceedings were taken down by me and transcribed using computer-aided transcription and that the foregoing is a true and correct transcript of said proceedings.

I further certify that I am neither of counsel nor of kin to any of the parties, nor am I in anywise interested in the result of said cause.

I further certify that I am duly licensed by the Alabama Board of Court Reporting as a Certified Court Reporter as evidenced by the ACCR number following my name found below.

_____  3/19/2015
ROY ISBELL, CCR, RDR, RMR, RPR, CRR
ACCR #22
COURT REPORTER, NOTARY PUBLIC
STATE OF ALABAMA AT LARGE

My Commission Expires: 10/7/2017

Certified Court Reporter
    Alabama Board of Court Reporters
Registered Professional Reporter
Registered Merit Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
    National Court Reporters Association