IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,      :
                               :
v.                             :
                               :
ADRIANNE DAVIS MILLER:
                               :      Criminal Action
                               :
        Defendant.             :      No. 1:14CR00054-004


DEFENDANT'S AMENDED RESPONSE TO PSR

COMES NOW Adrianne Davis Miller and reasserts her previously
filed objections to the Presentence Investigation Report filed by
United States Probation Officer Kelli M. Cleveland on January 5,
2015 and offers these additional comments in support of her
contention that the guidelines seriously overstate the nature of
her involvement and that they are greater than necessary to
satisfy the purposes of sentencing as they fail to adequately
reflect §3553(a) considerations:

1.  **Paragraph 9:** Strickland's assertion that he had been
    "buying methamphetamine from Miller" and that "she was
    due to receive a shipment" of methamphetamine ice from
    "her supplier" greatly contorts the truth. The
    investigation principals were Strickland, Monceaux,
    Thomas and A.M., all of whom have been characterized in
    reports as "known cooks."[1]  Miller, is an addict,
    having become afflicted while still in her native
    Montgomery. Previously fully employed and "clean" for 8
    ½ years, she fell back into drug abuse due to a litany
    of personal problems that included an abusive marriage
    and subsequent divorce. She began using intravenously,
    introduced to this new high by her new Mobile friends.

---

[1]    A.M is a confidential informant.

N:\Dom\Open Files\Miller, Adrianne Davis\PSR response.wpd

Users share sources of supply and Miller knew people in Montgomery. She placed those disparate ends together, but not as a principal as Strickland would supposedly have you believe.[2] When Strickland was arrested on March 11, 2014 - if the MCSO Narrative is accurate - he minimized his role as a user, began cooperating and deflected attention to Miller.

2.   **Paragraph 11:** Soon thereafter, the deputies located Miller in Satsuma. She was accompanied by Thomas. The deputies recovered 43 grams of meth in Thomas' bag. Miller takes no issue with the facts as they were rendered here, except to note that - as the report makes clear - this was a transaction involving Thomas and A.M. She had no knowledge of the contents of that bag.[3]

3.   **Paragraph 13:** Miller recognizes the culpability ramifications of her involvement but she has never characterized Marks as "her supplier" as that is not how she thought of herself. Nor was it true. Indeed, while she is an essential link, the purchases were made by others who would supply the money: Miller would make the introductions and never receive anything substantial in return.

4.   Miller cooperated on the very first day of her arrest, offering not just information, but also luring Jeffrey and Jeri Marks from Montgomery to Mobile. She spent an

---

[2]   Her payment was often an "eight-ball" of product. While the fact that Miller was the go-between (the hookup) certainly doesn't diminish her culpability, it should certainly serve to place her final punishment in a better perspective.

[3]   Miller began cooperating immediately and was confronted concerning the officers' suspicion that Thomas' bag contained contraband. She had no knowledge of what was in the bag. She explained that they had been waiting for Marks to arrive from Montgomery with "product" so it didn't make sense that Thomas would have had any contraband on his person as they would have eagerly used it. As it turned out, Thomas - whose paranoiac and erratic behavior had led them on a wild adventure, caused their eviction from the motel and led the law enforcement officers to the other residence - had been holding out on Miller. The officers appeared to be satisfied with her explanation as the facts and circumstances appeared to bear her out.

entire day on a stake out with the deputies at which time she the details of Marks' involvement and also implicated others.[4]

5.   Despite the arrest and conviction of the Marks couple and others, the government refuses to make a motion for downward departure, taking the position that Miller absconded when she returned to Montgomery - something she absolutely refutes - and for not following the conditions of pre-trial release that resulted in her rearrest.[5]

6.   Miller has given three debriefings, the first one almost immediately after her arrest, a second prior to her guilty plea and another recently, given even after the government's announcement that it will not move for reduction of sentence and that she should not be accorded points for acceptance of responsibility.

7.   The guidelines vastly overstate Miller's involvement.

---

[4]   As noted above, the investigation principals were Strickland, Monceaux, Thomas and A.M. It was Miller's immediate cooperation that resulted in the sting that resulted in Jeffrey Marks' capture. Marks, faced with the cooperation of Miller and others, pled and was sentenced to 200 months, his wife Jeri to 87 months.

[5]   That the government and the co-defendants relied heavily on Miller's statements is obvious as they appear throughout the Factual Resumes for both of the Marks defendants and well as those of Strickland, Thomas and Turner's. See Docs 81, 87, 106, 108, 114, & 120. In discussions attempting to resolve this issue, the government maintains that Miller was "not available" when needed. However, Miller was arrested on 8/22/14. Her initial appearance was 9/4/14. Strickland, Turner and Thomas' pleas all occurred after those dates. Husband and wife Marks entered pleas before that date. However, Latisha Colvin, attorney for Jeffrey Marks, would testify that it was the expected testimony from Miller that not only coerced her client's plea but which also led to the 5.3 kilogram amount since the discovery for the activity in Mobile did not reveal any amounts even approaching that and the government represented that Miller would substantiate it. If the government truly considered Miller MIA, they did not relate that either to defense counsel or to the court, all of whom relied on these representations.

8.  Witnesses will be called at the sentencing hearing to explain why a variance from the advisory range is justified. This is because:

- the guidelines fail to adequately reflect §3553(a) considerations;

- the amount of incarceration called for in the PSR is not sufficiently individualized to the circumstances of this case;

- the circumstances are ones generally associated with sentencing leniency so as to make the defendant an excellent candidate for a guidelines departure, and;

- to sentence Miller within the guideline range would lead to sentencing disparity.[6]

In an attempt to resolve this matter the undersigned has conferred with the Assistant United States Attorney and with the Probation Officer assigned to this case.

s/DOMINGO SOTO
Domingo Soto
SOTOD0690
MADDEN & SOTO
Attorney for Defendant
465 Dauphin Street
Mobile, Alabama  36602
251-432-0380
251-433-5964 (FAX)
soto@maddenandsoto.com

CERTIFICATE OF SERVICE

---

[6]     Although they are still pending sentencing, the plea agreements entered into with the others, especially the principal co-defendants Strickland and Thomas, intrinsically lead to disparity. Turner, (aka "biker chick"), although a co-entrepreneur with her boyfriend "Jamie" in the business of selling meth, is held accountable for 172.2 grams, Strickland and Thomas to 88.5 and 172.2 gram, respectively.

I hereby certify that I have on this March 24, 2015 electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Gloria Bedwell
Assistant United States Attorney
63 S. Royal St. Suite 600
Mobile, AL  36602

Kelli M. Cleveland
U.S. Probation Officer
P.O. Box 2985
Mobile, AL 36652

s/DOMINGO SOTO
Domingo Soto