IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 14-00054-CG |
| | * | |
| ADRIANNE MILLER | * | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE LETTER
REQUESTING EARLY RELEASE (DOC. 431)**

Comes now the United States of America, by and through the United States Attorney, and responds in opposition to the defendant's motion for release (Doc. 431, Page ID#2160), as follows:

**Background/Procedural Posture**

Miller was indicted for her role in a large-scale methamphetamine distribution conspiracy along with seven co-defendants. She was initially released on conditions, which included her attendance at the Home of Grace, an in-patient faith-based drug treatment facility. Miller pled guilty to one count of conspiracy to possess with intent to distribute methamphetamine and one count of possession of pseudoephedrine with knowledge it would be used to manufacture a controlled substance.

The day before the plea hearing, Miller filed a copy of the plea agreement with handwritten notes and changes to significant terms of the agreement. At the hearing, the Court discussed the marks in the document, and the Government provided a clean copy of the document, which Miller signed and which was filed with the Court. Doc. 216 at 4-5, 16-17. After a thorough and detailed plea colloquy, in which the Court reviewed the terms of the plea

1

agreement, the applicable statutory penalties, the factual resume, and the rights Miller was waiving, the Court accepted Miller's guilty plea and found that the Miller was aware of the nature of the charges and consequences of the plea, and that the plea was knowing and voluntary. Id. at 17-18. The clean copy of the plea agreement, Doc. 125, was filed in open court.

Before her sentencing hearing, Miller was caught illegally using methamphetamine again, intravenously. At a hearing on the violation of release conditions, Doc. 307, page ID #1411, at Page ID#1415, Miller admitted the drug use and the Court revoked her release conditions, remanding her to custody. Id. She has remained in custody since that hearing.

Prior to the sentencing hearing, Miller's original attorney, James Pittman, withdrew from the case and Domingo Soto filed a notice of appearance as retained counsel. At the sentencing hearing, the Court overruled the defense objection to the gun enhancement under U.S.S.G. § 2D.1.1(b)(1). The Court also upheld the loss of credit for acceptance of responsibility due to Miller's ongoing drug abuse while on conditions. The Court found that the guideline range was 360 months to life, but sentenced Miller to 180 months imprisonment on each count to run concurrently after Soto stringently argued that a downward variance was appropriate in the case. Doc. 308 at 37-38, Page ID#1453-54.

After the sentencing, Soto discussed with Miller the issue of an appeal. Doc. 360, Ex. 2 at 2. Although a notice of no appeal was filed on April 23, 2015, Doc.248, Page ID # 1112, Soto subsequently realized that Miller was dissatisfied with his performance and that she intended to pursue an ineffective assistance claim against him. Id. He filed a pro se notice of appeal for Miller to safeguard the deadline, which Miller signed and filed. Doc. 253. Miller told Soto she would hire another attorney to handle the appeal. Soto recalled that another

2

attorney called him but told him that he would not be pursuing the appeal in light of the appeal waiver in Miller's plea agreement. Id.

Miller's direct appeal was ultimately dismissed due to her failure to timely pursue it. Doc. 287. She filed a habeas petition alleging that both her lawyers were constitutionally ineffective. Doc. 354. The magistrate judge granted the habeas petition in part, to the extent that the court permitted Miller to file an out-of-time notice of appeal, thus providing her with a direct appeal of her conviction and/or sentencing. Doc. 415, Page ID# 2064, at Page ID#2077. Miller's remaining claims were dismissed without prejudice. Id. The district court adopted the magistrate judge's report and recommendations as the order of the court. Doc. 420, Page ID#2098. The court appointed another attorney to represent Miller on the direct appeal, and that matter remains pending before the court of appeals, with appellant's brief having been recently filed on April 15, 2020. The appellee's brief is not yet due.

### The Instant Petition

Meanwhile, the defendant has written an undated letter to the Court filed on April 14, 2020 (Doc. 431, Page ID #2160), asking the Court to consider her release on "whatever terms the BOP deems necessary, in case of emergency release during this pandemic." She adds that if BOP starts releasing non-violent low level offenders, she wishes to be considered in that category. She then lists various accomplishments she claims to have achieved through BOP programs. She further claims to have been rehabilitated by the few years she has spent in custody, and she asks the Court to consider her request for mercy during the crisis.

The Court has construed the motion as a motion for release and ordered that the Government respond. Doc. 432.

**Argument**

Mindful of the axiom that pro se pleadings are to be liberally construed, the Government interprets the defendant's letter as a petition under 18 U.S.C. § 3145(c). The defendant's out-of-time direct appeal is pending before the Eleventh Circuit, the Court having appointed counsel in January of 2020 to represent the defendant. The district court retains jurisdiction over release or detention of a defendant during the pendency of an appeal. *United States v. Meister*, 744 F.3d 1236, 1237 (11th Cir. 2013). As the movant, however, Miller must met the burden of proof that she is entitled to discretionary relief. See *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (the defendant has the burden to establish the factors listed in 18 U.S.C. § 3143(b)(1); *United States v. Geer*, 2006 U.S. Dist. LEXIS 106685, case no. 03-cr-20566, *6 (S.D. Fla. Jan. 10, 2006) (defendant bears the burden to establish "exceptional reasons" under 18 U.S.C. § 3145(c)). Miller's letter, even liberally construed, does not establish facts sufficient to meet her burden of proof relating to the statutory factors – that she is not a flight risk and that she is likely to prevail on appeal—and there are no exceptional circumstances justifying the Court's exercise of discretion to release her. Accordingly, the Government submits it is due to be denied.

The controlling statute, 18 U.S.C. § 3143(b), requires that after the imposition of sentence, the judge "shall" order that that defendant be detained unless she can show by clear and convincing evidence that she is not likely to flee or pose a danger to others or the community and that the appeal is not for the purpose of delay and raises a substantial question that is likely to prevail on appeal, meaning a reversal of the conviction, a new trial, a non-custodial sentence or a sentence of time served. 18 U.S.C. § 3143(b)(1)(B)(i)-(iv); *Giancola*, 754 F.2d at 901.

In Miller's case, however, 18 U.S.C. § 3143(b)(2) requires that she "shall be detained," as she has been convicted of a drug-trafficking offense with a maximum penalty of 10 years or more. See 18 U.S.C. § 3142(f)(1)(C). She must not only meet the requirements of § 3143(b)(1), but she must also "clearly show[ ] that there are exceptional reasons why [her] detention would be not appropriate." If she had done so, the Court would have discretion to order conditional release. 18 U.S.C. § 3145(c). Because Miller has not done so, her letter motion must be denied.

An analysis of Miller's allegations establishes that she asks the Court to consider her if BOP starts releasing "non-violent low-level offenders." She wanted to make the Court aware of her accomplishments and positive changes she alleges she has made during her incarceration. Her evidence consists of letters from friends and relatives addressed to the pardon attorney, many of them stating their perception that Miller was unjustly treated. They express the same position that her second attorney did at her sentencing hearing—she is "just an addict," therefore, she should not serve a lengthy prison sentence. Of course, this position fails to recognize what the evidence showed about her participation in a large-scale drug distribution operation and the significant amounts of drugs she distributed for it. That resulted in serious injury to the community, and the sentences required in such cases by Congress through the statutory mandatory sentences and the severe guidelines take that into account, as did the Court, also required by statute to weigh these other factors.

Miller also included numerous certificates of various sorts, recognizing her attendance at various programs. Miller submitted approximately 25 of the 48 certificates to the Court previously, in a previous pro se pleading asking for a reduction in her sentence to go to

5

rehabilitation during June of 2017. Doc. 382, Page ID # 1835, at PageID#1837-72. The Court denied that pro se motion by endorsement. Doc. 383.

Even if the Court could consider Miller's instant motion, she does not provide the Court with specific information about a release plan, or where she would maintain residence during the appeal. She is at the prison in Coleman, Florida, so she is no longer in the district. She would have to be supervised by pretrial services in the district of her release, and there is no indication that the district in Florida would conduct the courtesy supervision. And the Court would have to satisfy itself that any such proposal would be suitable.

To accomplish any of that, the Court would have to make finding relating to whether the defendant has established by clear and convincing evidence that she does not present a flight risk or a danger to the community. The letters from her family and friends do not reflect an apprehension of the need to protect the community from the defendant's illegal activities, which they have yet to acknowledge. Rather, they show only sympathy toward Miller as a victim of what they characterize as a simple drug addiction. This short-sightedness does not suggest that any of her family or friends appreciate the risk that the Court must weigh in determining a sentence or the risk associated with release of a convicted felon.

More importantly, however, Miller cannot establish that her appeal her appeal is not for the purpose of delay and raises a substantial question that is likely to prevail on appeal, meaning a reversal of the conviction, a new trial, a non-custodial sentence or a sentence of time served. 18 U.S.C. § 3143(b)(1)(B)(i)-(iv); *Giancola*, 754 F.2d at 901. The defendant pled guilty to the charges in this case pursuant to a written plea agreement, Doc. 125, which contains an appeal waiver. At Doc. 125, PageID# 482-83, the plea agreement provides as follows:

6

# LIMITED WAIVER OF RIGHT TO APPEAL AND
# WAIVER OF COLLATERAL ATTACK

22. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence (including a sentence imposed on revocation of probation or supervised release) in any district court or appellate court proceedings.
    a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:
        (1) any sentence imposed in excess of the statutory maximum;
        (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.
    In addition, the defendant further reserves the right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to Title 28, United States Code, Section 2255

                    *       *       *

25. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

    During the plea colloquy, Doc. 216, the Court specifically addressed the waiver, as

follows:

    THE COURT:    And do you also understand that under some circumstances you or the government may have the right to appeal any sentence that is imposed, but each of your plea agreements contains a limited waiver of your right to appeal and in each of your cases you have retained the right to appeal only if sentence is imposed in excess of the statutory maximum, if sentence is imposed that constitutes an upward departure or variance from the sentencing guideline range, or if you have a claim of ineffective assistance of counsel?  Do you understand that you have waived your right to appeal in all but those three circumstances outlined in your plea agreement?
    DEFENDANT MILLER:   Yes, ma'am.
    DEFENDANT SCHAFFER:   Yes ma'am.[1]

Doc. 216, Page ID#876.

---

[1] The Court took two guilty pleas during the colloquy, the defendant Miller and Charles Henry Schaffer, Criminal No.14-00153-CG.  The cases are not related.

Miller was sentenced well below the low end of the advisory guidelines, which were 360 months to life. Instead, she was sentenced to 180 months imprisonment. The appeal waiver in the plea agreement, then, should be enforced to result in the dismissal of her appeal. Courts of appeal have upheld appeal waivers. *United States v. Bushert*, 997 F.2d 1343, 1350-52 (11th Cir. 1993) (appeal waivers, when knowingly and voluntarily made and specifically addressed by the court during the plea colloquy, are enforceable). The appellant's brief in the direct appeal does not even address the appeal waiver. Under the facts in this case, the Government submits that Miller's appeal is unlikely to prevail, and her conviction and sentence will be upheld. The Government further submits that Miller cannot meet her burden and the motion is due to be denied.

Miller's letter to the court asks for consideration for release "[i]f BOP starts releasing non-violent low-level offenders" during the pandemic. The Government does not concede that she is a "low level offender."[2] Nevertheless, the Government has confirmed with the

---

2 When the investigation was initiated, co-defendant Strickland offered to sell three ounces of methamphetamine to a confidential informant working with law enforcement. Investigators ultimately arranged a controlled buy from Strickland for an ounce, and he was arrested and advised of his rights. In the post-Miranda statement, Strickland identified his source of supply as "Adrianne." He said he had bought meth ice from her in the past and could make future purchases. He provided information about Adrianne's vehicle, and deputies located it and her residence. Strickland also told the investigators that Adrianne was due to receive a shipment of methamphetamine ice form her supplier in Montgomery. Two days later, investigators discovered the Miller and co-defendant Thomas were in a hotel room in Satsuma. Investigators interviewed a subject leaving the hotel, who was found in possession of methamphetamine ice. He told investigators that he bought it from Thomas, and that Thomas had taken 9 ounces of meth ice and pseudoephedrine pills to a residence in the area. Deputies obtained a search warrant for the residence linked to Thomas and Miller, where they ultimately recovered the bag described by the cooperator. The homeowner told the deputies that Thomas was supposed to return to get the bag, which contained 143 grams of methamphetamine ice, 96 pseudoephedrine pills, digital scales and two shotguns. When Miller and Thomas were finally stopped by the

defendant's case manager at Coleman that she does not qualify for consideration under the current early release or home confinement program established by BOP after the outbreak of the virus in the United States.

The Attorney General has recognized that the need to manage COVID-19 effectively in federal prisons may, in some cases, require a transfer of certain federal prisoners to home confinement and he instructed the director of the BUP to establish guidelines under which to implement such transfers. *See* Memo. from Att'y Gen. to Dir. of BOP, "*Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic*" (dated Mar. 26, 2020) (identifying at-risk inmates under the CDC criteria and determining whether they are eligible for early release or home confinement). *See also* Memo. to All BOP Chief Exec. Officers "*Corona Virus (COVID-19) Phase Two Action Plan*" (dated Mar. 13, 2020) (setting out precautionary measures to be taken within BOP facilities to minimize the spread of COVID-19). This guidance indicates that the BOP is equipped to confront this outbreak in a manner that considers the individualized needs of specific inmates.

---

deputies as they left the hotel in separate vehicle, Miller was advised of her rights. In her post-Miranda statement, she said she was due to receive a shipment of methamphetamine ice from her supplier, co-defendant Jeffrey Marks, later that day. Miller stated that Marks brought 8 or 9 ounces of meth every week for six months for distribution, which totals approximately 5.3 kilograms, part of the relevant conduct for which Miller was held accountable at sentencing (the rest resulting from the inclusion of the pseudoephedrine pills, Doc. 159, Page ID #657). Miller told the deputies that she customarily obtained the hotel room for Marks and his wife when they arrived in Mobile with the drugs. The deputies arrested Marks and his wife, co-defendant Jeri Marks, when the brought approximately 150 grams of meth ice and a gun to a hotel room in Mobile where they were supposed to meet Miller. Doc. 159, Page ID#654- 655. It is obvious that Miller was integral part of the conspiracy and her role in the offense was anything but a "low level offender." She was associated with a multi-district large-scale distribution organization. Because Miller agreed to these facts in her factual resume, Doc. 125, Page ID# 487-494, she cannot now be heard to contest them. See Doc. 216, Page ID#879.

As to whether the COVID 19 outbreak qualifies as "an exceptional reason" under Section 3145(c), districts have split.[3] The Government submits that the Court need not address this issue in the instant case, as the defendant has failed to carry her burden under the statute. AT the direction of the Attorney General, BOP has responded aggressively to this virus to ensure the health and safety of incarcerated persons. As the Third Circuit recently noted, BOP, "has significantly modified its operations in light of the COVID-19 pandemic. It has suspended all social visits, limited inmate movement, screens inmates for symptoms and temperature evaluations, and if present, isolates symptomatic inmates." *United States v. Roeder*, 2020 U.S. App. LEXIS 10246, no. 20-1682, *4–5 (3d Cir. Apr. 1, 2020).

Miller has not submitted evidence or raised any argument that the virus is present at Coleman. Even if she had, the Government submits that the BOP can manage the outbreak in an effective manner, and that BOP personnel should have discretion to address individual inmate needs, including potential transfer to home confinement, during this pandemic. As noted above, it does not appear that Miller is in a high risk category for consideration under the current BOP guidelines.

Because COVID 19 is a global pandemic, all American face a risk of contracting it. Miller has presented no evidence to establish that she faces less risk of contracting the virus if

---

3 *Compare, e.g., United States v. Blegen*, 2020 U.S. Dist. LEXIS 57616, 19-cr-304 (D. Minn. Apr. 2, 2020) (the COVID-19 outbreak does not constitute an "exceptional reason" for release under Section 3145(c)) *and United States v. Kerr*, 2020 U.S. Dist. LEXIS 55566, 3:19-cr-296-L, (N.D. Tex. Mar. 31, 2020) (same), *with e.g., United States v. Lopez*, 2020 U.S. Dist. LEXIS 59957, 19-cr-116-KMW, (S.D.N.Y. Apr. 6, 2020) (the COVID-19 outbreak does constitute an "exceptional reason" for release under Section 3145(c)) *and United States v. Harris*, 2020 U.S. Dist. LEXIS 53632, 19-cr-356 (D.D.C. Mar. 26, 2020) (same).

she could be released.   The Government submits that there is no evidence in this case to support a finding of exceptional reasons to release Miller from custody under the statute.   Miller has not carried her burden.

WHEREFORE, the Government submits that the defendant's abovecaptioned motion is due to be denied.

Respectfully submitted,

RICHARD W. MOORE
UNITED STATES ATTORNEY

By: s/Gloria A. Bedwell
Gloria A. Bedwell (BEDWG1000)
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama    36602
Telephone: (251) 441-5845
Facsimile:   (251) 441-5277
E-mail: gloria.bedwell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that April 27, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney for the defendant, and that I have mailed a copy of the same postage prepaid, to the pro se defendant at Adrianne Davis Miller, Reg. No. 15437-002, Federal Correctional Complex Camp, P. O. Box 1027, Coleman, Florida, 33521. .

  s/Gloria A. Bedwell
Gloria A. Bedwell
Assistant United States Attorney